**SO ORDERED**



THOMAS J. CATLIOTA
U. S. BANKRUPTCY JUDGE

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION**

| | |
|---|---|
| In re: | **Chapter 11** |
| **TVI CORPORATION,** *et al*,[1] | **Case No. 09-15677 (TJC)** |
| Debtors. | **(Jointly Administered)** |

**ORDER CONFIRMING DEBTORS' FIRST AMENDED PLAN OF
REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

This matter came before the Court upon consideration of Debtors' First Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (as modified by this Order, the "Amended Plan").[2]  The Court, having received statements of counsel and having considered the entire record before it in this case, the Plan Supplement, the Disclosure Statement to Accompany Debtors' First Amended Joint Plan of Reorganization (the "Disclosure Statement") and all documents submitted in support of confirmation of the Amended Plan, after due deliberation

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:  TVI Corporation (5536), Safety Tech International, Inc. (9297), Signature Special Event Services, Inc. (2946), and CAPA Manufacturing Corp. (8703).

[2] All capitalized terms in this Confirmation Order not defined herein shall have the meaning defined in the Amended Plan.

thereon and sufficient cause appearing therefor, makes the following findings of facts and conclusions of law:³

  A.  The Court has jurisdiction over these Chapter 11 Cases pursuant to 28 U.S.C. §§157 and 1334.  Venue is proper in this District pursuant to 28 U.S.C. §§1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. §157(b)(2).

  B.  On August 31, 2009, the Debtors filed their Plan of Reorganization (the "Original Plan") and the Disclosure Statement accompanying the Original Plan.

  C.  This Court held a hearing on October 8, 2009, on notice to all creditors, equity security holders and other parties in interest to consider approval of the Disclosure Statement.

  D.  On October 9, 2009, the Debtors filed the Amended Plan [Doc. No. 254] and the Disclosure Statement as revised to reflect changes to the Amended Plan and additional disclosures.

  E.  On October 13, 2009, this Court approved the Disclosure Statement as containing adequate information to enable a hypothetical investor, typical of holders of Claims against or Equity Interests in the Debtors, to make an informed judgment regarding voting to accept or reject the Amended Plan.

  F.  On October 21-23, 2009, the Debtors served or caused to be served solicitation packages, including the Amended Plan, the Disclosure Statement, the Order Approving Disclosure Statement, Fixing Voting Record Date, and Scheduling Certain Hearing Dates and Deadlines in Connection with the Proposed Confirmation of the Debtors' Plan of Reorganization ("Solicitation Packages") to all creditors, equity security holders, and parties-in-interest.  Also,

---

³ Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact, when appropriate.  See Fed. R. Bankr. P. 7052.

where required by the Amended Plan, creditors received their appropriate Class Ballot. The Solicitation Packages constituted adequate and sufficient notice to all creditors, equity security holders, and parties in interest of the Confirmation Hearing and the objection and voting deadlines as to the Amended Plan, the terms of the Amended Plan, the releases contained therein, and the settlements effectuated therein. On November 16, 2009, the Debtors filed, served or caused to be served the Plan Supplement Documents on those parties entitled to notice of such documents. All such notice complied in all respects with the orders of this Court, the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, including without limitation, Bankruptcy Rules 2002, 3017, 3018, 3019, 9006 and 9019, and the Local Rules of this Court, and otherwise satisfied the requirements of due process.

G. All Claims and Equity Interests are Impaired under the Amended Plan (except as set forth in the following paragraph). All holders of Impaired Claims were entitled to vote to accept or reject the Amended Plan (except as set forth in the following three paragraphs).

H. Holders of Priority Tax Claims, holders of Class 1 Priority Non-Tax Claims, and holders of Class 2 BB&T FSB Claims are not impaired, are presumed to accept the Amended Plan, and are not entitled to vote to accept or reject the Amended Plan.

I. Holders of Class 5 Intercompany Claims will receive no distributions under the Amended Plan and are deemed to have rejected the Amended Plan without the need or opportunity to vote.

J. Equity Interest holders in Class 6 will not retain their Equity Interests, and no Distributions on account of such Equity Interests will be made under the Amended Plan. Such equity Interest holders are deemed to have rejected the Amended Plan without the need or opportunity to vote.

K.  Ballots accepting the Amended Plan have been timely received from holders of more than two-thirds in dollar amount and more than one-half in number of the Claims voting in each of Classes 3 and 4, who voted on the Amended Plan. On December 7, 2009, the Debtors filed their Certification and Summary of Voting on the Amended Plan, certifying the vote on the Amended Plan.

L.  The deadline for filing objections to confirmation of the Amended Plan was December 1, 2009. No objections or responsive pleadings were filed with the Court or received by the Debtors, except for requests for minor modifications to the Plan which have been included in this Order.

M.  The Amended Plan, as modified by this Order, provides for the resolution of the outstanding Claims against the Debtors, and the continuance of the Debtors' business.

N.  The Amended Plan contemplates that, on or prior to the Effective Date, Safety Tech, CAPA, and Signature will be merged with and into TVI, and that TVI will change its name to Immediate Response Technologies, Inc. (the "Reorganized Debtor")

O.  The Amended Plan, as modified by this Order, provides that, on the Effective Date, the Debtors' existing equity securities will be cancelled, new equity securities will be issued in accordance with the terms of the Amended Plan and the Plan Supplement Documents, and the Reorganized Debtor will enter into the Exit Financing.

P.  On December 8, 2009, this Court held a hearing to consider confirmation of the Amended Plan.

Q.  The Amended Plan complies with the applicable provisions of the Bankruptcy Code, including, without limitation, §§1122, 1123, and 1129 of the Bankruptcy Code.

R. The Debtors have solicited acceptances of the Amended Plan in good faith and in compliance with the applicable provisions of Chapter 11 of the Bankruptcy Code.

S. The Amended Plan has been proposed in good faith and not by any means forbidden by law.

T. At least one class of claims that is impaired under the Amended Plan has accepted the Amended Plan, not including acceptance of the Amended Plan by any insiders.

U. The Amended Plan does not discriminate unfairly and is fair and equitable, with respect to each class of Claims or Equity Interests that is impaired under the Amended Plan.

V. Distribution of the New Preferred Stock and the Distribution Shares to Branch Banking & Trust Company under the Amended Plan is exempt from any registration requirements pursuant to Section 1145 of the Bankruptcy Code.

W. Any Distribution or transfer of the New Preferred Stock or the Distribution Shares to a designee of Branch Banking & Trust Company is not exempt from registration requirements pursuant to Section 1145 of the Bankruptcy Code.

X. The Debtors believe that the transfer of Distribution Shares from BB&T to Post-Confirmation Management as contemplated by the Amended Plan is exempt from federal and state registration requirements pursuant to available exemptions other than Section 1145 of the Bankruptcy Code, and the Securities and Exchange Commission makes no determination regarding the applicability of any such exemption.

Y. The modifications to the Amended Plan contained in Paragraph 1 herein constitute minor modifications and do not adversely change the treatment of a Claim of any Creditor or the Interest of any equity security holder that has not accepted such modifications in writing. The modifications require no additional disclosure or resolicitation of votes on the

Amended Plan, and the modifications shall be deemed accepted by all Creditors that have previously accepted the Amended Plan.

NOW, THEREFORE, it is hereby ORDERED, ADJUDGED and DECREED as follows:

1. The Amended Plan is modified as follows:

   a) The definition of New Revolving Line of Credit in Article I, Section A is amended by deleting the reference to "$3,000,000" and replacing it with "$3,390,000."

   b) Article IV, Section C. 2. (a) is deleted and replaced by the following new Article IV, Section C. 2. (a):

   "Cash proceeds of the Exit Facility in the amount of $16,390,000;"

   c) Article VI, Section B is deleted and replaced by the following new Article VI, Section B:

   **B.     Distributions/Establishment of Disbursement Account(s).**

   As soon as practical after the Effective Date, the PAC shall establish a segregated bank account in the name of the PAC, which account shall utilize the Reorganized Debtor's tax identification number and shall be a trust account for the benefit of Class 4 Claims (the "Class 4 Account") pursuant to the Plan and utilized solely for the investment and distribution of Cash consistent with the terms and conditions of the Plan. On the Effective Date, the Debtors shall deposit $390,000.00 (the "Class 4 Funds") into a reserve account for the benefit of the holders of the Class 4 Claims. The Class 4 Funds shall be transferred to the Class 4 Account within five (5) Business Days of receipt of notice of the Class 4 Account being opened.

   All Distributions under this Plan to holders of Class 4 Claims shall be made by the PAC. The PAC shall provide the Reorganized Debtor and BB&T with a summary within ten (10) Business Days after any Distribution.

   d) Article VI, Section C is deleted and replaced by the following new Article VI, Section C:

   **C.     Delivery of Distributions and Undeliverable or Unclaimed Distributions.**

   **1.     Delivery of Distributions in General.**

Except as otherwise provided herein, the Reorganized Debtor (or the PAC in the case of holders of Class 4 Claims) shall make Distributions to holders of Allowed Claims at the address for each such holder as indicated on the Debtors' records as of the date of any such Distribution; provided, however, that the manner of such Distributions shall be determined at the discretion of the Reorganized Debtor (or the PAC in the case of holders of Class 4 Claims); and provided further, that the address for each holder of an Allowed Claim shall be deemed to be the address set forth in any proof of claim filed by that holder unless a package is returned by the United States post office with a forwarding address for such claimant in which case the Reorganized Debtor (or the PAC in the case of holders of Class 4 Claims) shall forward the Distribution to the forwarding address provided for such claimant and amend its Distribution schedule accordingly.

### 2. De Minimus Distributions.

The Reorganized Debtor (or the PAC in the case of holders of Class 4 Claims) shall not be required to make Distributions to holders of Allowed Claims if any specific Distribution is in an amount of less than $100.00 unless a request for such Distribution is made in writing to the Reorganized Debtor (or the PAC in the case of holders of Class 4 Claims).

### 3. Undeliverable Distributions and Unclaimed Property.

In the event that any Distribution to any holder is returned as undeliverable, no Distribution to such holder shall be made unless and until the Reorganized Debtor (or the PAC in the case of holders of Class 4 Claims) has determined the then current address of such holder, at which time such Distribution shall be made to such holder without interest; provided, however, such Distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one (1) year from the Effective Date. Notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary, all unclaimed property or interests in property unclaimed for the one (1) year period (other than funds held in the Class 4 Account) shall revert to the Reorganized Debtor and the Claim of any holder to such Distribution shall be discharged and forever barred.

e)  The first paragraph of Article X, Section I is amended by adding the following sentence to the end of the paragraph:

"The releases set forth above shall not apply or be effective against any person who did not vote to accept the Plan."

f)  Article X, Section I is amended by adding the following sentence to the end of Article X, Section I.

> "Nothing contained herein shall preclude the Securities and Exchange Commission from pursuing actions against any Persons other than the Debtors or the Reorganized Debtor."

  g) The first sentence of Article X, Section J is amended by deleting "prepetition or" in the third line.

2. The Amended Plan is hereby **CONFIRMED** and **APPROVED** in all respects and is binding on all Holders of Claims, Existing Equity Interests and stockholders of the Debtors according to the terms of the Amended Plan.

3. The Amended and Restated Governing Documents, the Plan Supplement Documents and all transactions contemplated thereby are approved in all respects.

4. The Debtors are hereby authorized, directed, and empowered to take all actions necessary or appropriate to implement the Amended Plan in accordance with its terms, including, without limitation, to enter into, implement, consummate, execute, and/or deliver the contracts, instruments, and other agreements or documents contemplated therein including the Plan Supplement Documents and the Amended and Restated Governing Documents, consistent with the terms of this Confirmation Order and the Amended Plan.

5. Terry Barber is hereby appointed as the sole member of the PAC. The PAC and Terry Barber or her successor are hereby authorized, directed and empowered to take all actions necessary or appropriate in accordance with the terms of the Amended Plan included but not limited to making Distributions to holders of Class 4 Claims and prosecuting Avoidance Actions. The PAC shall have exclusive authority to prosecute Avoidance Actions.

6. On the Effective Date and in accordance with Article VIII of the Plan, all assets and liabilities of the Debtors (i) will be deemed to be merged solely for purposes of this Plan and Distributions to be made pursuant to this Plan, (ii) the obligations of each Debtor will be deemed to be the obligations of all of the Debtors solely for purposes of this Plan and Distributions

hereunder, (iii) any Claims filed or to be filed will be deemed Claims against all of the Debtors, (iv) each Claim filed in the chapter 11 case of any Debtor will be deemed filed against all of the Debtors in accordance with the substantive consolidation of the assets and liabilities of the Debtors, (v) all transfers, disbursements and Distributions made by any Debtor hereunder will be deemed to be made by all of the Debtors, and (vi) all guarantees of the Debtors of the obligations of any other Debtors shall be deemed eliminated so that any Claim against any Debtor and any guarantee thereof executed by any other Debtor and any joint or several liability of any of the Debtors shall be deemed to be one obligation of the Debtors.  Holders of Allowed Claims in each Class shall be entitled to their Pro Rata share of assets available for Distribution to such Class without regard to which Debtor was originally liable for such Claim.  Such limited substantive consolidation shall not affect (other than for Plan voting and Distribution purposes): (i) the legal and corporate structure of the Reorganized Debtor; or (ii) the pre and post Petition Date liens, guarantees and security interests that are required to be maintained (x) in connection with the terms of the DIP Facility, the Exit Facility Financing Documents and the Plan Supplement Documents, and (y) pursuant to the terms of the DIP Facility and conditions contained in this Amended Plan.  The substantive consolidation proposed herein shall not affect each Debtor's obligation to file the necessary operating reports and pay any required fees pursuant to 28 U.S.C. § 1930(a)(6).  Such obligations shall continue until an order is entered closing, dismissing or converting such Debtor's Chapter 11 Case.

7.  In the event of any inconsistency between the Amended Plan, on the one hand, and this Confirmation Order, on the other, the terms and provisions of this Order shall govern.

8.  On the Effective Date, pursuant to the terms of the Amended Plan:

   a)  The Debtors' Existing Equity Interests and instruments evidencing them shall be cancelled.

b) Except as specifically provided for in the Amended Plan, the Plan Supplement Documents, the Amended and Restated Governing Documents or prior Orders of this Court, all assets and property of the Debtors shall re-vest in the Reorganized Debtor free and clear of all pre-Confirmation liens, claims, encumbrances or interests, whether fixed or contingent, liquidated or unliquidated.

c) The Reorganized Debtor shall execute and deliver all documents and instruments required by the Exit Facility, Plan Supplement Documents and the Amended and Restated Governing Documents.

d) All fees payable pursuant to 28 U.S.C. § 1930 which are due as of the Effective Date shall have been paid in full in cash.

e) All Distributions contemplated by the Amended Plan on the Effective Date shall be made.

f) After entry of this Order and prior to the Effective Date of the Amended Plan, the Debtors shall establish a reserve of $1,536,000 to pay certain Exit Costs comprised of:

1. Estimated Fee Claims of:

   a. Duane Morris LLP in the amount of $500,000;

   b. Buccino in the amount of $35,000;

   c. Committee counsel in the amount of $35,000;

   d. Protiviti in the amount of $92,000;

   e. Gross Mendelsohn in the amount of $60,000;

   f. Troutman Sanders in the amount of $30,000;

2. Attorneys' fees and costs of Miles & Stockbridge P.C. in the amount of $195,000;

3. Administrative Claims payable pursuant to 28 U.S.C. § 1930 in the amount of $43,000;

4. Priority Tax Claims in the amount of $20,000;

5. Priority Non-Tax Claims in the amount of $75,000;

6. Class 4 Funds in the amount of $390,000;

    7. Cure costs to Glenn Dale Business Center in the amount of $44,000.

    8. 503(b)(9) Claims in the amount of $17,000.

Such reserved funds shall be held at Branch Banking & Trust Company ("BB&T) in account no. 000153234248 (the "Reserve Account"). Notwithstanding anything to the contrary in the Amended Plan, this Order, or otherwise, the Reserve Account, all amounts at any time deposited therein or available thereunder, and all proceeds and other rights with respect thereto (the "Reserve Collateral") are part of and shall remain the collateral of BB&T and are subject to a security interest and lien in favor of BB&T to secure the outstanding prepetitition and postpetition obligations due and owing from the Debtors. On or after the Effective Date of the Amended Plan, the Reorganized Debtor may request in writing that BB&T release the Reserve Collateral solely for use in paying one or more of the actual Exit Costs subject to this paragraph; provided, however, that the Reorganized Debtor shall provide reasonable documentation to BB&T that each Exit Cost is due and payable prior to a release of funds. Notwithstanding anything to the contrary herein or in the Plan, upon (i) the failure of the Effective Date to occur as set forth in the Amended Plan, or (ii) payment of all Exit Costs contemplated by this paragraph on or after the Effective Date, the balance in the Reserve Account shall be paid to BB&T and applied, BB&T's sole and absolute discretion, against either or both: (a) the obligations owed to BB&T by the Debtors (including without limitation to the prepetition obligations in which case such payment will be deemed to be a redemption of the Preferred Shares by the Reorganized Debtor solely for the purpose of determining the Unadjusted Preferred Distribution Amount (as such term is defined in the Amended and Restated Charter)) or (b) the obligations owed by the Reorganized Debtor under the Exit Facility (if after the Effective Date), without further Order of this Court.

9. Except for those executory contracts and unexpired leases that (a) are the subject of a motion to reject filed prior to the Confirmation Hearing, (b) have been rejected pursuant to order of Court during the pendency of these Chapter 11 Cases, (c) have expired or terminated pursuant to their own terms during the pendency of these Chapter 11 Cases, and (d) insurance policies, which are specifically dealt with Article X, Section L of the Amended Plan, all of the executory contracts and unexpired leases that exist between the Debtors and any Person, are specifically assumed as of, and subject to the occurrence of, the Effective Date and pursuant to

the Amended Plan. To the extent any such executory contracts or unexpired leases have been amended prior to the hearing on confirmation of the Amended Plan, such contracts or leases shall be assumed as so amended. No non-Debtor counterparty to any executory contract or unexpired lease has filed an objection to the Amended Plan. All such parties are deemed to have consented to the assumption of such executory contract or unexpired lease, and all such parties shall be forever barred from objecting to the assumption by the Debtors.

10. This Court shall retain jurisdiction as set forth in Article XI of the Amended Plan. The Court's retention of jurisdiction shall not, and does not, affect the finality of this Confirmation Order.

11. All holders of Claims against and Equity Interests in the Debtors whose Claims and Interests are treated under the Amended Plan and this Confirmation Order are permanently restrained and enjoined from instituting or continuing any action or employing any process to collect such debts or to pursue such interests, except as otherwise specifically provided by this Confirmation Order or the Amended Plan.

12. Except as otherwise provided in the Amended Plan (as modified herein) or this Confirmation Order, the Debtors, the Reorganized Debtor, and the Released Parties shall be entitled to the benefits of the release and exculpation provisions to the extent provided in Article X, Sections H, I, and J of the Amended Plan. Subject to the express language of the releases and exculpation provisions, (i) the Debtors, the Estates, and the Committee fully release all claims against BB&T and the Lender Group, (ii) the Debtors, the Estates, and the Reorganized Debtor fully release all claims against the Released Parties, (iii) all Holders of Claims that voted to accept the Plan fully release the Released Parties; and (iv) all Holders of Administrative Claims, Claims, or Equity Interests release the Debtors, the Reorganized Debtor

and the Released Parties for any postpetition act or omission related to the Chapter 11 Cases except for any act or omission that constitutes gross negligence, fraud or willful misconduct provided however that the foregoing does not operate to release the Debtor or the Reorganized Debtor from any obligation arising under this Order or the Amended Plan.  Entry of this Order constitutes approval, pursuant to Bankruptcy Rule 9019, of the releases provided herein, and further, constitutes a finding that the releases are: (a) in exchange for good and valuable consideration provided by the Debtors and Released Parties, representing good faith settlement and compromise of the claims released by such releases; (b) in the best interests of the Debtors and all holders of Claims; (c) fair, equitable, and reasonable; (d) approved after due notice and opportunity for hearing; and (e) a bar to any of the releasing parties asserting any claim released by the releasing party against any of the Debtors or the Released Parties or their respective property.

13. Upon the Effective Date, the Debtors are discharged pursuant to Section 1141(d)(1) of the Bankruptcy Code.

14. Effective as of the Confirmation Date, but subject to the occurrence of the Effective Date, and except as expressly provided in the Amended Plan or this Confirmation Order, the provisions of the Amended Plan (including the exhibits to, and the Plan Supplement Documents and the Amended and Restated Governing Documents, and all other documents and agreements executed pursuant to, the Amended Plan) and this Confirmation Order shall be binding on (i) the Debtors, (ii) the Reorganized Debtor, (iii) the Creditors' Committee, (iv) BB&T, (v) all holders of Claims against and Interests in the Debtors, whether or not impaired under the Amended Plan and whether or not, if impaired, such holders accepted, rejected, or are deemed to have accepted or rejected the Amended Plan, (vi) each person or entity acquiring or

retaining property under the Amended Plan, (vii) all entities that are party to or are subject to the Amended Plan or the releases, discharges, and/or injunctions described in the Amended Plan, and this Confirmation Order, and (viii) each of the foregoing's respective heirs, successors, assigns, trustees, executors, administrators, affiliates, officers, directors, agents, representatives, attorneys, beneficiaries, or guardians, if any, including, but not limited to the PAC and any trustee, responsible officer, or other responsible person appointed for the Debtors in a case under any chapter of the Bankruptcy Code.

15.     **Fee Claim Bar Date:**  In accordance with the terms of the Amended Plan, all requests for compensation or reimbursement of Fee Claims pursuant to sections 327, 328, 330, 331, 503 or 1103 of the Bankruptcy Code for services rendered prior to the Effective Date shall be filed and served on the Reorganized Debtor and their counsel, the United States Trustee, counsel to the Creditors' Committee, counsel to the Lender and such other entities who are designated by the Bankruptcy Rules, the Confirmation Order or any other order(s) of the Court, no later than forty-five (45) days after the Effective Date.  Holders of Fee Claims that are required to file and serve applications for final allowance of their Fee Claims and that do not file and serve such applications by the required deadline shall be forever barred from asserting such Fee Claims against the Debtors, the Reorganized Debtor or their respective properties, and such Fee Claims shall be deemed discharged *nunc pro tunc* as of the Effective Date.  Counsel to Lender shall not be required to file or serve an Application for Fee Claims.  All fees, costs and expenses of Lender that are outstanding as of the Effective Date shall be paid by the Reorganized Debtor in Cash on the Effective Date.  Objections to any Fee Claims must be filed and served on the Reorganized Debtor and their counsel and the requesting party no later than thirty (30) days (or such longer period as may be allowed by order of the Court) after the date on which an

application for final allowance of such Fee Claims was filed and served.  A Fee Claim shall constitute an Allowed Administrative Claim upon entry of a Final Order approving such Fee Claim.

16.  **Administrative Claim Bar Date:**  All requests for compensation or reimbursement of Administrative Claims (except for (i) Fee Claims, (ii) Ordinary Course Administrative Claims and (iii) DIP Claims) for services rendered or goods provided prior to the Effective Date shall be filed and served on the Reorganized Debtor and their counsel, the United States Trustee, counsel to the Creditors' Committee, counsel to the Lender and such other entities who are designated by the Bankruptcy Rules, no later than thirty (30) days after the Effective Date ("Administrative Claims Bar Date").  Holders of Administrative Claims, (except for (i) Fee Claims, (ii) Ordinary Course Administrative Claims and (iii) DIP Claims) not paid prior to the Effective Date, shall submit requests for payment on or before the Administrative Claims Bar Date or forever be barred from doing so.  This Order constitutes sufficient notice of the Administrative Claims Bar Date.  The Reorganized Debtor shall have forty five (45) days (or such longer period as may be allowed by order of the Court) following the Administrative Claims Bar Date to review and object to any then unpaid Administrative Claims.  To the extent that a portion of any Administrative Claim is Disputed, then the undisputed portion of such Administrative Claim shall be paid in accordance with Article III, Section A.1. of the Amended Plan.

17.  Nothing herein or the Amended Plan shall affect or in any way limit the rights of BB&T as provided in the Final DIP Order, the Order approving the Asset Sale [Doc. No. 289] or the Administrative Order establishing procedures for payment of Fee Claims [Doc. No. 86].

18. Pursuant to Bankruptcy Rule 3020(a), no deposits of consideration to be distributed under the Plan are required other than the deposits set forth herein.

19. Pursuant to section 1146(a) of the Bankruptcy Code, (a) the issuance, transfer and exchange under the Plan of New Equity and the Liens granted to secure the Reorganized Debtor's obligations in respect of the Exit Facility and Exit Facility Financing Documents, (b) the making or assignment of any lease or sublease, or (c) the making or delivery of any other instrument whatsoever, in furtherance of or in connection with the Plan, shall not be subject to any stamp tax or other similar tax, and all state or local governmental officials or agents are directed to forgo the collection of any such tax and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax.

20. Notwithstanding the provisions of Bankruptcy Rule 3020(e), this Order is not stayed and the Amended Plan may be consummated prior to expiration of fourteen (14) days following the entry of this Order, subject to the conditions precedent to the Effective Date as set forth in Article XV of the Amended Plan.

21. In accordance with Bankruptcy Rules 2002 and 3020(c), within ten Business Days of the entry of the Confirmation Order, the Debtors shall serve a copy of the Confirmation Order and a Notice of the Effective Date by U.S. mail, overnight courier service, or electronically on: (a) the United States Trustee, (b) counsel for the Creditors' Committee, (c) all holders of Claims, and (d) all other parties-in-interest. The Debtors are not required to serve a copy of the Confirmation Order on holders of Equity Interests.

[End of Order]